UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

SHARONDA MICHELLE DANIELS,　　　　　　Case No. 16-31693-dof
　　　Debtor.　　　　　　　　　　　　　　　　Chapter 7 Proceeding
　　　　　　　　　　　　　　　　　　　　　　Hon. Daniel S. Opperman
_____/
MICHIGAN UNEMPLOYMENT
INSURANCE AGENCY,

　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　Adversary Proceeding
　　　　　　　　　　　　　　　　　　　　　　Case No. 16-03146-dof
SHARONDA MICHELLE DANIELS,

　　　Defendant.
_____/

## TRIAL OPINION

### Introduction

The Plaintiff in this case, Michigan Unemployment Insurance Agency (the "Agency"), seeks a determination from this Court that $2,396.00 in restitution for overpayments to Sharonda Michelle Daniels, the Defendant, as well as $9,540.00 in statutory fraud penalties, and $300.25 in interest are all excepted from discharge pursuant to 11 U.S.C. § 523(a)(2) and requests that this Court enter a judgment accordingly. Defendant denies that the Agency is entitled to such a judgment. Because the Court finds that the Agency has satisfied its burden of proof in establishing that Ms. Daniels obtained unemployment benefits as a result of fraud, the Court concludes that the debt owed by Ms. Daniels to the Agency is excepted from discharge.

The Court held a trial in this matter on December 11, 2017, and heard testimony of Cheyenne Mercurial, Emanuel Lewis, and the Defendant who were all called by Plaintiff. Ten

exhibits were admitted without objection. After hearing the testimony of the witnesses, examining the exhibits, and reviewing the post-trial briefs, the Court makes the following findings of fact.

Facts

At the time Defendant received her unemployment benefits, she had completed her high school education and earned a certified nursing assistant degree. For a thirty-six week time period, starting the week ending January 15, 2011, through the week ending September 17, 2011, Defendant was collecting unemployment benefits while working part-time as a nurse's aide and receiving wages from Michigan Community Services. During thirty-two of those weeks, Defendant failed to report that she was working or that she had earnings to the Agency as she was required to do.[1] During four of those weeks, Defendant did report her earnings to the Agency.

Claimants use the Michigan Automated Response Voice Interactive Network ("MARVIN") to certify to the Agency that they are eligible to receive unemployment benefits. Defendant was in fact eligible to receive benefits during the time period at issue because she was only working part-time and her remuneration was less than 1.6 times her weekly benefit rate. *See* Mich. Comp. Laws § 421.48. However, under Michigan law, she was required to report her earnings to the Agency because her benefits would be offset by her earnings. *See* Mich. Comp. Laws § 421.27(c). More specifically, her benefits would be reduced by $0.50 for each $1.00 earned. *Id.*

---

[1] The Agency is requesting restitution for overpaid benefits, as well as penalties and interest, for twenty-nine of those weeks: the weeks ending January 15, 2011, through January 29, 2011; February 12, 2011, through February 26, 2011; March 12, 2011; March 26, 2011, through April 16, 2011; April 30, 2011; May 14, 2011; May 28, 2011, through September 3, 2011; and September 17, 2011.

At the time of the trial, Mr. Emanuel Lewis had been an Unemployment Insurance Examiner at the Agency for fifteen years. He explained how the relevant portions of the MARVIN system worked during the time period at issue. A claimant must respond on a bi-weekly basis to seven or eight questions in order to claim unemployment benefits. In particular, question seven asked claimants: "did you work during week ending Saturday, mm/dd/yyyy?" If the claimant responded with "yes" by pushing "1," the MARVIN system then asked question eight: "did you have earnings, including cash payments, vacation pay, holiday pay, severance pay, or other wage continuation page? Do not report sub-payments paid by your employer." The claimant then inputted his or her gross wages. If the claimant responded "no" by pushing "2" to question seven, the MARVIN system defaulted to $0.00 wages. After the claimant finished listening to and answering the questions, MARVIN reviewed all of the questions and the claimant's answers and asked the claimant to verify that the responses were accurate. If the claimant did not agree, he or she could discard the responses and start over. After the claimant finished his or her responses and certified that they were correct, MARVIN told the claimant both the dollar amount of the benefit payment and the date of the expected payment.

As evidenced by the exhibits and Mr. Lewis' testimony, Defendant responded with "no" to question seven for the weeks at issue and the MARVIN system defaulted to $0.00 wages. Defendant was therefore improperly paid the full weekly benefit for those weeks.[2] During the four weeks Defendant did report her earnings, her earnings offset her benefits and she received less than the full weekly benefit.[3]

---

[2] Defendant's weekly benefit was $250.00. After taxes were withheld, she was issued a benefit payment of $214.12 per week for the weeks she did not report her earnings.

[3] For example, for the week ending February 5, 2011, she disclosed earnings of $212.00 and was therefore issued a benefit payment of $32.55, drastically less than the $214.12 she received when she did not disclose her earnings.

In February of 2012, the Agency discovered that Defendant had failed to report her wages for a time period she was receiving unemployment benefits. The Agency sent a fact-finding inquiry to Defendant to determine the facts and to allow her to provide an explanation for the possible overpayment of benefits. Defendant responded, stating, in part: "I believe I was entitled to my benefits because if I wasn't the people would have told me that I didn't qualify."

The Agency also sent a fact-finding inquiry to Defendant's employer, Michigan Community Services. Her employer provided weekly wage information that it verified with copies of Defendant's pay history for the weeks at issue. Ms. Cheyenne Mercurial, human resources generalist with the employer at the time of the trial, testified that the information provided was true and accurate based upon her review of the payroll records.

On April 21, 2015, the Agency issued "determination[s]" to Defendant, finding that she voluntarily quit her job without good cause, making her ineligible for unemployment benefits after leaving her job, and that she "intentionally misled and/or concealed information to obtain benefits [she was] not entitled to receive." On August 16, 2016, the Agency issued "redetermination[s]" to Defendant with revised calculations of the restitution payments and the statutory penalties owed.

Defendant filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on July 19, 2016. Plaintiff filed this adversary proceeding on October 18, 2016, seeking a determination that the amount owed to it for restitution, statutory penalties, and interest by the Defendant is excepted from discharge. Defendant failed to respond to the complaint and on December 7, 2016, a default judgment was entered. Defendant then hired counsel, who filed a motion to set aside the default judgment. After a hearing, the Court granted that motion, but held the case in abeyance pending an Agency re-review of the case. Upon completion of the Agency

review, the case was renewed on March 20, 2017, and the Agency decided to reverse course on the issue of whether Defendant voluntarily quit her job and proceed on the fraud issue only.

At trial, Ms. Daniels testified that she was unable to keep full-time employment with her employer because it did not have enough need for her services. This prompted her to inquire about whether she was eligible for unemployment benefits. After learning that she was eligible, she started using the MARVIN system. She claimed to have reported her earnings but had no explanation for why she thought MARVIN only recorded her income on four occasions and did not record her income during the remaining weeks. Instead, she gave a more general statement that she believed she did everything right and that she thought she was entitled to the benefits she received.

## Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1) and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) because the issues relate to the dischargeability of particular debts.

## Applicable Law

Section 523(a)(2)(A) of the Bankruptcy Code provides that certain debts are not dischargeable. In that section, debts are defined as debts "for money, property, services, or an extension, renewal, or refinancing of creditor, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

To prevail on a claim under Section 523(a)(2)(A), a plaintiff must show that:

(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2)

the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998) (citations and footnote omitted). Whether a debtor possessed intent to deceive is measured by a subjective standard. *Id.* at 281.

The purpose of Section 523(a)(2) is to prevent debtors from retaining the benefits of property obtained through fraud. *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1451 (6th Cir. 1994). Plaintiff must show each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Even so, the Court must construe all of the exceptions to discharge strictly, and must give the benefit of the doubt to the debtor. *See Rembert*, 141 F.3d at 281.

Turning to Michigan law, the Michigan Employment Security Act, Mich. Comp. Laws § 421.27(c), provides that individuals who are eligible for unemployment benefits shall have their weekly unemployment benefit amount adjusted based on any remuneration they receive. If the Agency determines that a claimant should not have been paid benefits, "the claimant shall repay the benefits paid during the entire period of ineligibility or disqualification." Mich. Comp. Laws § 421.29(9).

Mich. Comp. Laws § 421.62(a) specifically provides that where a claimant has been paid benefits he is not entitled to receive the Agency may recover those benefits plus interest. Additionally, if a claimant wrongfully obtains unemployment benefits as a result of a false statement or representation or the failure to disclose a material fact, and the amount of benefits is more than $500.00, the Agency may recover additional damages equal to four times the amount of benefits which were wrongfully paid. Mich. Comp. Laws § 421.54(b)(ii).

Analysis

Plaintiff bears the burden of establishing that Defendant defrauded the agency. Plaintiff's exhibits, along with the testimony of Mr. Lewis and Ms. Mercurial, facially establish all of the elements under Section 523(a)(2)(A). Defendant does not dispute any particular element, but rather argues that she provided the required information to MARVIN and that the computer system used by the Agency is unreliable.

To the extent Defendant's argument can be construed to deny that she failed to disclose her earnings to the Agency during the weeks at issue, the Court cannot accept that assertion. Plaintiff's exhibit 9 clearly indicates that Defendant reported income ranging from $116 up to $221 per week for four different weeks but did not report her earnings for the remaining thirty-two weeks. The Defendant had no explanation for why she thought MARVIN only recorded her income four times but did not record her income during the remaining weeks. Nor was there any evidence presented to explain why the MARVIN computer system worked as it was intended to on four occasions but failed to do so during the remaining weeks. Defendant's conclusory denial does not suffice to rebut the proof presented by Plaintiff.

Defendant's argument may also be construed as a denial that she had the required intent to deceive under *Rembert*. A debtor intends to deceive a creditor "when the debtor makes a false representation which the debtor knows or should have known would induce another to advance money, goods or services to the debtor." *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001). "Fraudulent intent requires an actual intent to mislead, which is more than mere negligence. . . . A 'dumb but honest' [debtor] does not satisfy the test." *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997) (citations omitted). A debtor's fraudulent intent

> may be inferred from the totality of the circumstances. The bankruptcy court must consider whether the totality of circumstances "presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor." The court may consider not only the debtor's conduct at the time of the representations, but may consider subsequent conduct, to the extent that it provides an indication of the debtor's state of mind at the time of the actionable representations.

*Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 492 (Bankr. D. Col. 2002) (quoting *Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (B.A.P. 10th Cir. 2000) (citations omitted)).

Here, the inference drawn from the totality of the circumstances is that Defendant intentionally failed to disclose her earnings to the Agency while knowing that she was required to do so. Defendant successfully requested unemployment benefits for the time period at issue by using the MARVIN computer system. The questions asked by MARVIN are all straightforward—did the Defendant work, did the Defendant have earnings, has the Defendant sought work, and has the Defendant turned down work. Indeed, on four different occasions, Defendant successfully reported her income. This demonstrates that she knew how to use the MARVIN system and also that she knew she was required to disclose her earnings. What is not clear is why she did not do so for the remaining weeks in which she was eligible for unemployment benefits. Importantly, at trial, Defendant did not provide an explanation to the Court as to what happened from her viewpoint. Moreover, this was not an occasional omission on the part of Defendant. During the relevant thirty-six week time period, Defendant failed to disclose her earnings for thirty-two of those weeks and only reported her earnings for four of those weeks.

The Court finds that Plaintiff has met its burden of proof in showing that Defendant received overpayments of unemployment benefits from the Plaintiff when she knew she was working and earning income, but failed to disclose those earnings to the Agency; Defendant

intentionally failed to disclose her earnings to the Agency knowing she was required to do so; Plaintiff justifiably relied on the Defendant's certifications regarding her request and statements for benefits; and but for Defendant's misrepresentations, the Plaintiff would not have paid the Defendant the unemployment benefits it did. The amount owed by Defendant to Plaintiff is therefore excepted from discharge under Section 523(a)(2). Having concluded that the entire debt owed by Defendant to the Agency is excepted from discharge under Section 523(a)(2), there is no need for the Court to address the Agency's alternative argument that that the statutory penalties owed by Defendant are also excepted from discharge pursuant to Section 523(a)(7). *See Mich. Unemployment Ins. Agency v. Andrews*, 2016 U.S. Dist. LEXIS 114468, *4-5 (E.D. Mich. Aug. 24 2016) (finding that Section 532(a), not Section 532(a)(7), applies to penalties imposed for the overpayment of unemployment benefits under Michigan law because these penalties arise out of fraud).

## Conclusion

The Court determines that the debt in the amount of $12,236.25 owed by Defendant to Plaintiff is excepted from discharge under 11 U.S.C. § 523(a)(2) and that this amount is reduced to judgment. Counsel for Plaintiff is directed to prepare an order consistent with this Opinion and the entry of orders procedures of this Court.

**Signed on April 18, 2018**



/s/ Daniel S. Opperman
**Daniel S. Opperman**
**United States Bankruptcy Judge**